IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

UNITED STATES OF AMERICA

       v.

DAMIEN RILEY

\*

\*

\*

\*

\*

CRIMINAL NO.:  WDQ-13-0608

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

MEMORANDUM OPINION

Damien Riley, *pro se*, is charged with possession with intent to distribute heroin (four counts),[1] possession with the intent to distribute cocaine,[2] possession of a firearm by a felon,[3] and maintaining a drug involved premises.[4]  ECF No. 41.

Trial began on February 2, 2015 and a motions hearing was held on February 3, 2015.  Pending were Riley's motions: (1) to suppress search evidence (ECF No. 21), (2) to suppress oral communications (ECF No. 22), (3) to dismiss the original indictment for speedy trial violations (ECF No. 25), (4) to dismiss the superseding indictment (ECF No. 33), (5) for sanctions and immediate release (ECF No. 36), (6) for review of his pretrial detention order (ECF No. 40), (7) to dismiss the

---

[1] 21 U.S.C. § 841(a)(1).

[2] 21 U.S.C. § 841(a)(1).

[3] 18 U.S.C. § 922(g)(1).

[4] 21 U.S.C. § 856(a).

indictment (ECF No. 46), (8) to compel discovery and opposition to the Court's scheduling order (ECF No. 49), (9) amended motion to dismiss (ECF No. 50), (10) motions for hearing (ECF Nos. 54, 57), and (11) motion to dismiss (ECF No. 60).  The day before trial, the Government filed a motion to exclude a witness's past conduct under Fed. R. Evid. 608(b).  ECF No. 65.  On February 2, 2015, before *voir dire*, Riley moved to postpone the trial and have stand-by counsel appointed as counsel.

For the following reasons, the Court granted in part and denied in part the Government's motion in limine; Riley's opposition to the scheduling order was granted in part to allow the Court to consider all filed motions; all other motions were denied.

I.   Background

A.   Facts[5]

1.   Overview of the Alleged Crime and Arrest

In July 2013, the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and the Baltimore Police Department ("BPD) began investigating Riley's alleged involvement in drug trafficking in the area of Reisterstown Road and West Cold

---

[5] The facts are from the Government's opposition briefs and supporting exhibits (ECF Nos. 51, 55) and the magistrate's case documents (ECF No. 7).

Spring Lane, Baltimore City.[6]  ECF No. 7-1 at 4.  On August 13, 2013, an undercover ATF task force officer contacted Riley by text message.  ECF No. 55 at 3.  Allegedly at Riley's direction, the undercover officer went to a Citgo Gas Station.  *Id*.  The undercover officer was under surveillance at all times by ATF agents.  *Id*.  Riley allegedly approached the undercover officer's vehicle, entered it, and exchanged $400 for a plastic bag containing heroin.[7]  *Id*.  Riley then left the area.  *Id*.

On August 19, 2013, the undercover officer allegedly made another purchase from Riley.  ECF No. 55 at 3.  Riley gave the undercover officer 4.8 grams of heroin in exchange for $560 in premarked bills.  *Id*. at 4.  The undercover officer asked Riley if Riley also sold cocaine.  *Id*.  Riley "indicated he had approximately 27 grams of cocaine but did not want to 'break it up.'  [Riley] promised that he would bring cocaine to the next transaction."  *Id*.

On September 4, 2013, the undercover officer allegedly contacted Riley to arrange another transaction.  ECF No. 55 at 4.  Riley told the undercover officer that he had to return to

---

[6] Investigators received this information from a confidential informant.  ECF No. 7-1 at 6.

[7] ATF agents field tested the bag's contents at the scene and sent some to BPD's Evidence Control Unit for testing.  ECF No. 7-1 at 9.

his home to "get something" for the undercover officer before they met at the Citgo station. ECF No. 7-1 at 10-11; ECF No. 55 at 4. Agents observed Riley enter his apartment; he stayed for about seven minutes before he went to the Citgo station. ECF No. 7-1 at 11. After Riley entered the undercover officer's vehicle, he gave the officer 4.4 grams of heroin and 1.7 grams of cocaine in exchange for $600. ECF No. 55 at 5.

In October 2013, investigators interviewed another confidential informant. ECF No. 7-1 at 7. The informant told investigators that Riley is known to sell heroin and cocaine, and confirmed Riley's address. *Id.*

On October 23, 2013, the Government filed a criminal complaint against Riley[8] and obtained an arrest warrant from Magistrate Judge Stephanie Gallagher. ECF No. 7-2; ECF No. 55 at 5. The agents also requested a search warrant for Riley's residence based on the agents' experience about what drug traffickers usually keep in their homes, and the surveillance of Riley visiting his home "immediately before or after engaging in [the] transactions." ECF No. 7-1 at 1-2, 12-13. Judge Gallagher found probable cause and issued the search warrant. *See* ECF No. 7-1 at 14; ECF No. 55 at 5.

---

[8] The criminal complaint only charged Riley for the September 4, 2013 transaction. *See* ECF No. 55 at 5.

On October 24, 2013, agents executed both warrants.  ECF No. 55 at 5.  Riley was stopped outside of his apartment complex by ATF agents.  Hearing Testimony of TFO Paul Geare (hereinafter, "Geare testimony").[9]  The agents were carrying semiautomatic rifles.  Hearing Testimony of Damien Riley (hereinafter, "Riley testimony").  Riley was placed in handcuffs, and Agent Geare informed Riley of his *Miranda* rights.  *See* Geare testimony.  When Agent Geare asked Riley if he understood the *Miranda* warning, Riley responded by nodding his head and saying, "Yes."  *Id*.  Agent Geare asked Riley where he was coming from, if he had keys to the apartment on his person, and if anyone was currently in the apartment.  *Id*.  Riley answered these questions and did not request an attorney or ask for the questioning to stop.  *Id*.  In a pat-down, the agents discovered keys on Riley.  *See* ECF No. 55 at 6.

The agents escorted Riley to the apartment.  *Id*.  At the apartment, TFO Daniel Kerwin asked Riley to identify which of the keys was for the apartment.  Hearing Testimony of TFO Daniel K. Kerwin (hereinafter, "Kerwin testimony").  Riley never asserted his right to counsel to Agent Kerwin or asked for the questioning to stop.  *Id*.  Riley identified the apartment key,

---

[9] To speed the drafting of this opinion, the Court relied on a rough transcript of the hearing testimony and the Court's recollections rather than waiting for the official transcript.

and the agents entered the apartment.  *See id.*[10]  "The agents uncovered evidence of significant other crimes by the defendant, as well as evidence that he had been planning additional criminal acts at the time of his arrest."  ECF No. 51 at 2.

That same day, the Government brought Riley before Judge Gallagher.  ECF No. 7-3.  Judge Gallagher advised Riley of his rights, appointed Federal Public Defender Paul Hazlehurst as counsel, and ordered temporary detention.  ECF Nos. 7-3, 7-6. On October 28, 2013, Riley appeared before Magistrate Judge Beth P. Gesner for a detention hearing.  ECF No. 7-8.  Judge Gesner found that there was probable cause that Riley had committed the charged offense, there was serious risk Riley would not appear for trial, and no combination of conditions could ensure community safety.[11]  ECF No. 7-9.  Accordingly, Judge Gesner ordered Riley's detention pending trial.  *Id.*

---

[10] At the hearing, Riley asserted a different version of events. Riley stated that several agents carrying "machine guns" stopped him near the apartment complex.  He was immediately placed in handcuffs, and was never given his *Miranda* warnings.  When the agents took him to the apartment, they attempted to kick in the door.  Only after trying to kick in the door did the agents ask for the keys.  Riley admits that he showed them the correct key. According to Riley, the only questions he was asked by the agents were 1) his name and 2) which key was for the apartment. *See* Riley Testimony.

[11] Judge Gesner also noted the presumption of detention, that Riley's criminal history included a prior firearms conviction and assault conviction, and that he was arrested while on supervision.  *See* ECF No. 7-9.

On October 31, 2013, a grand jury returned an indictment charging Riley with possession with intent to distribute heroin and possession with intent to distribute cocaine during the September 4, 2013 transaction.  ECF No. 1; ECF No. 55 at 5.

2. Subsequent Procedural History

On December 5, 2013, the Government filed a motion to exclude the time between October 31, 2013 and December 5, 2013 from speedy trial computations.  ECF No. 3.  The motion stated that "[o]n November 5, 2013, defense counsel entered into a discovery agreement with the Government," and exclusion was necessary to allow the defense to review the discovery before "begin[ing] meaningful plea discussions."  ECF No. 3 at 2. Further, the Government asserted that "[c]ounsel for the defendant advises that the defense does not have any objection to this request."[12]  *Id.* at 2.  The Court issued an order granting the motion and excluding time under 18 U.S.C. §

---

[12] Riley continually asserts that he never consented to any speedy trial exclusions, and that his counsel did so without his permission.  *See, e.g.,* ECF No. 46 at 1-2.  However, defendant consent is not required for an exclusion based on "the ends of justice" under 18 U.S.C. § 3161(h)(7).  Further, even if Riley is to be believed and his counsel misrepresented his consent, that is an issue of ineffective assistance rather than a speedy trial issue because the Government reasonably relied on defense counsel's representations in not bringing the case to trial. *Cf. United States v. Hopkins,* 310 F.3d 145, 150 (4th Cir. 2002) ("The government appropriately relied on the motion in assuming that the speedy trial clock was stopped.").

3161(h)(7).   ECF No. 4.   The Court found that the "exclusion of
time w[ould] permit the parties to obtain an accurate recounting
of the defendant's criminal history, allow the defense to review
discovery provided by the Government, and allow the parties to
begin plea discussions."   *Id.* at 1.   Defense counsel never
objected to the motion or the order.

On January 16, 2014, defense counsel contacted Chambers and
"request[ed] that the United States Probation Office be
authorized to prepare a report in regard to [] Riley's criminal
history. . . .   [A]n accounting of [] Riley's criminal history
will assist the parties in plea negotiations and may help to
resolve this matter."   ECF No. 52.   Further, counsel stated that
"Riley agrees that the time from December 5, 2013 to the receipt
of the criminal history report by the parties is excludable from
the time in which [] Riley's trial must commence under the
Speedy Trial Act."   *Id.*   Per counsel's request, on January 17,
2014, his "email [was] forwarded [by the Court] to the United
States Probation Office and marked as approved."[13]

On January 24, 2014, Riley was arraigned on the indictment
by Magistrate Judge Susan K. Gauvey.   ECF No. 6.   On January 28,
2014, Riley had his initial appearance before Magistrate Judge
Timothy J. Sullivan.   ECF No. 8.

---

[13] ECF No. 52.

On February 11, 2014, the criminal history report was completed and delivered to the parties. ECF No. 51 at 3. The parties immediately began plea negotiations. *See id*. On March 18, 2014, the Court held a telephonic status conference. *Id*. The parties indicated to the Court that an agreement was forthcoming and requested another status conference on April 21, 2014. On April 16, 2014, counsel contacted Chambers and asked that the April 21, 2014 conference call be canceled because he was meeting with his client that day.

On May 14, 2014 defense counsel filed a motion to withdraw stating "that [] Riley no longer wishes to have the Federal Public Defender act as his attorney and that a breakdown in communication exists that prevents undersigned counsel from further representing [] Riley." ECF No. 11. That same day, the Court referred the case to Judge Gauvey for an attorney inquiry hearing. ECF No. 12. On May 22, 2014, the Court received correspondence from Riley about counsel's alleged deficiencies, including failure to provide Riley with discovery and not informing Riley how the criminal sentencing guidelines would be affected by "a plea agreement of any kind." ECF No. 13. On June 9, 2014, Judge Gauvey held the attorney inquiry hearing, granted the motion to withdraw, and ordered the appointment of

CJA counsel.  ECF No. 15.  On June 10, 2014, Gerald C. Ruter,

Esq. was appointed defense counsel.  ECF No. 16.

On July 30, 2014, the Government submitted a status report:

> The respective parties are working with the hope
> that the above captioned case will resolve short of
> trial with a guilty plea.  The Pre-Plea Investigation
> has been completed and both parties have received the
> documents.  The parties have engaged in and continue
> meaningful plea negotiations.  Consequently, if this
> Honorable Court determines it to be appropriate, the
> respective parties recommend giving the Court a status
> report on or about August 30, 2014.  *If the parties
> cannot reach [an] agreement, the parties will contact
> chambers to schedule a motions and trial date.*

ECF No. 17 (emphasis added).  On July 31, 2014, the Court

approved the status report.  *Id.*

On September 9, 2014, the Court received correspondence

from Riley indicating that he was having problems with defense

counsel.  ECF No. 18.  Riley stated that he had "requested a

motion to dismiss due to speedy trial status and/or deadlines."

*Id.*  On September 12, 2014, defense counsel submitted a status

letter.  ECF No. 19.  Defense counsel "apologize[d] for

submitting [the] status report late" and requested that the

Court schedule trial because "[a]ttempts at settling this case

short of trial have not yielded any results."  *Id.*  On September

18, 2014, the Court held a status conference, and trial was

scheduled to begin February 2, 2015 with motions to be heard at

that time.  ECF No. 20.

On October 2, 2014, defense counsel filed motions to suppress seized evidence and oral communications.  ECF Nos. 21, 22.  On October 23 and 27, 2014, the Court received correspondence from Riley about dismissing the case because of speedy trial issues.  ECF Nos. 23-24.  On October 28, 2014, defense counsel filed a motion to dismiss because of speedy trial violations.  ECF No. 25.

On October 28, 2014, a grand jury returned a superseding indictment.  ECF No. 26.  In addition to the two prior counts relating to the September 4, 2013 transaction, the superseding indictment added a charge of possession with intent to distribute relating to the August 19, 2013 transaction.  *Id.*; *see also* ECF No. 51 at 4.

On October 30, 2014, the Court received correspondence from Riley expressing his concerns about the case and requesting that the Court "immediately intervene by demanding my counsel to protect my interests . . . ."  ECF No. 30.  The Court immediately referred the case to Judge Gallagher for an attorney inquiry hearing.  ECF No. 32.  On November 7, 2014, Riley filed a motion to dismiss the superseding indictment.  ECF No. 33.  On November 12, 2014, Judge Gallagher held the attorney inquiry hearing and granted Riley's request to continue *pro se*.  ECF No.

11

34.   On November 21, 2014, Riley moved for review of his
pretrial detention order.   ECF Nos. 39, 40.

On November 25, a grand jury returned a second superseding
indictment.   ECF No. 41.   The new indictment added charges for
the sale of heroin during the August 13, 2013 transaction,
possession with intent to distribute on October 24, 2013,
possession of a firearm in violation of 19 U.S.C. § 922(g), and
maintaining a place for the purpose of manufacturing, storing,
distributing, and using a controlled substance.   *Id.*

On December 10, 2014, Riley moved to dismiss.   ECF No. 46.
On December 12, 2014, the Government requested a scheduling
order for motions because Riley had asserted the Government's
failure to respond meant his motions were conceded.   ECF No. 47;
*see* ECF No. 46.   On December 15, 2014, the Court approved the
Government's proposed scheduling order.[14]   ECF No. 48.   On
December 19, 2014, Riley filed a motion to compel and opposed
the scheduling order.[15]   ECF No. 49.   Riley also filed an amended
motion to dismiss.   ECF No. 50.

---

[14] The scheduling order set the motions deadline as December 19,
2014.   ECF No. 48.   The motions hearing was scheduled for
February 2, 2015.   *Id.*

[15] Riley stated that he had not received any discovery from the
Government and opposed the scheduling order because it "is
unreasonable and extremely prejudicial for a defendant to
proceed to trial without any review of discovery."   ECF No. 49.
Because Riley is *pro se*, and to avoid possible issues with the

On December 23, 2014, the Government responded to Riley's numerous speedy trial motions.  ECF No. 51.  On December 31, 2014, Riley filed a motion for a hearing.  ECF No. 54.  On December 31, 2014, the Government filed its opposition to Riley's other motions.  ECF No. 55.  On January 8, 2015, Riley filed another motion for a hearing.[16]  ECF No. 57.  On January 22, 2015, Riley filed another motion to dismiss.  ECF No. 60.

On February 1, 2015, the Government filed a Rule 608(b) motion in limine to exclude cross examination of a witness's past acts.  ECF No. 65.  Trial began on February 2, 2015 with jury selection.  Before *voir dire*, Riley asked that stand-by counsel be appointed defense counsel and requested a three-month postponement for defense counsel to prepare the case.

II.  Analysis

A.   Motion to Review Pretrial Detention

Riley asserts that he was improperly detained because he was arrested on October 24, 2013, but his initial appearance on the first indictment was not until January 28, 2014.  ECF No. 40 at 1.  Riley argues that this violated the Bail Reform Act.[17]

---

scheduling order, the Court considered the three motions Riley filed outside the motions deadline.

[16] Because a motions hearing was scheduled for February 2, 2015, the Court denied as moot the motions for a hearing.

[17] 18 U.S.C. § 3141 *et seq.*

13

Section 3142(f)(2)(B) of the Bail Reform Act states that a detention hearing "shall be held immediately upon the person's first appearance before the judicial officer unless that person, or the attorney for the Government, seeks a continuance. Except for good cause, a continuance on motion of such person may not exceed five days . . . ., and a continuance on motion of the attorney for the Government may not exceed three days . . . . During a continuance, such person shall be detained . . . ." Similarly, Rule 5(b) of the Federal Rules of Criminal Procedure states that "[a] person making an arrest within the United States must take the defendant without unnecessary delay before a magistrate judge, or before a state or local judicial officer . . . ., unless a statute provides otherwise."[18]

Although Riley was not arraigned on the indictment until January 24, 2014, he misconstrues this arraignment as his "first appearance before a judicial officer." After Riley was arrested on October 24, 2013, he was immediately taken before a magistrate judge, assigned counsel, and informed of his rights under the criminal complaint. ECF No. 7-3. Riley was temporarily detained, but a detention hearing occurred four days later. ECF No. 7-8. After the detention hearing, Judge Gesner

---

[18] Riley does not discuss Rule 5(b) in his motion. It is included, however, for completeness.

14

made specific findings about why Riley would be detained until trial.  ECF No. 7-9.

These facts establish that the Government complied with both Federal Rule of Criminal Procedure 5(b) and 18 U.S.C. § 3142(f)(2)(B).[19]  Accordingly, the Court denied Riley's motion.

B.    Motion to Suppress Statements

Riley moved to suppress all "evidence obtained directly and/or indirectly as a result of the recording of several alleged oral communications of [] Riley between July 15, 2013 and October 16, 2013."  ECF No. 22 at 1.  Defense counsel did not state the grounds for the suppression other than "Riley gave no permission to have his communications recorded" and "[t]he communications were made without articulable suspicion or probable cause."  *Id.* at 2.  No cases were cited.  *Id.*

At the hearing, the Court also reviewed the custodial statements made by Riley to ATF agents on October 24, 2013.  Two ATF agents and Riley testified about the events.

*Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L.Ed.2d 694 (1966), requires the police to inform a suspect that he has the right to remain silent and the right to an attorney

---

[19] Even had there been a violation, the Supreme Court has held that immediate release, as requested by Riley, is not the required remedy.  *See United States v. Montalvo-Murillo*, 495 U.S. 711, 720-22 (1990).

before any "custodial interrogation". *See Miranda*, 384 U.S. at 479, 86 S.Ct. 1602.

A suspect is "'in custody' for purposes of *Miranda* either if the person has been arrested or if his freedom of action has been curtailed to a degree associated with arrest." United *States v. Pope*, 212 F. App'x 214, 218 (4th Cir. 2007) (*quoting United States v. Sullivan*, 138 F. 3d 126, 130 (4th Cir. 1998)). The inquiry is objective, "and asks whether a reasonable man in the suspect's position would have understood his situation to be one of custody"; in other words, whether the suspect felt free to leave. *United States v. Hashime*, 734 F.3d 278, 282-83 (4th Cir. 2013) (internal quotation marks omitted); *see also J.D.B. v. North Carolina*, 131 S. Ct. 2394, 2402 (2011).

A waiver of *Miranda* rights must be voluntary, knowing, and intelligent. *Moran v. Burbine*, 475 U.S. 412, 421, 106 S. Ct. 1135, 89 L.Ed.2d 410 (1986). A waiver is voluntary, knowing, and intelligent if it was "the product of a free and deliberate choice rather than intimidation, coercion, or deception," and if it was "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.*; *see also United States v. Cristobal*, 293 F.3d 134, 138-40 (4th Cir. 2002) (suspect validly waived his *Miranda* rights when officers interrogated him in hospital the day after

16

being shot multiple times by police).  Express written or oral

waiver of *Miranda* rights is strong proof of the waiver's

validity.  *North Carolina v. Butler*, 441 U.S. 369, 373 (1979).

The Court engages "in the same inquiry when analyzing the

voluntariness of a *Miranda* waiver as when analyzing the

voluntariness of statements under the Due Process Clause,"

*Cristobal*, 293 F.3d at 140.  The test for determining

voluntariness "is whether the confession was 'extracted by any

sort of threats or violence, [or] obtained by any direct or

implied promises, however slight, [or] by the exertion of any

improper influence.'"  *United States v. Braxton*, 112 F.3d 777,

780 (4th Cir. 1997) (*quoting Hutto v. Ross*, 429 U.S. 28, 30

(1976) (alterations in original)).  "The mere existence of

threats, violence, implied promises, improper influence, or

other coercive police activity, however, does not automatically

render a confession involuntary."  *Id*.  The Court must ask

whether "the defendant's will has been overborne or his capacity

for self-determination critically impaired because of coercive

police conduct."  *Id*.

The statements between July 15 and October 16, 2013 that

the defense seeks to suppress were made during conversations

with an undercover police officer.  "Fidelity to the doctrine

announced in *Miranda* requires that it be enforced strictly, but

17

only in those types of situations in which the concerns that powered the decision are implicated." *Berkemer v. McCarty*, 468 U.S. 420, 437 (1984). In *Illinois v. Perkins*, 496 U.S. 292, 296 (1990), the Supreme Court held that "[c]onversations between suspects and undercover agents do not implicate the concerns underlying *Miranda*. The essential ingredients of a "police-dominated atmosphere" and compulsion are not present . . . . Coercion is determined from the perspective of the suspect." The defense has cited no authority that recording such conversations somehow places them back in *Miranda's* sphere.

The statements made by Riley on October 24, 2013 are also admissible. Agent Geare testified that he gave Riley *Miranda* warnings, and Riley responded that he understood the warnings. *See* Geare Testimony. Nothing before the Court showed that the agents obtained this consent through violence. Further, even if Riley had never been advised of his *Miranda* rights, he testified that the only question he was asked was which key was to the apartment. The agents already had authorization to search the apartment through the search warrant.

There was no violation of the Fifth Amendment. Accordingly, the Court denied Riley's motion to suppress.

C.   Motion to Suppress Search Evidence

The defense argues that the search warrant permitting the search of Riley's home lacked probable cause, "fails to establish an adequate nexus between the places to be searched and the probable cause," had the legal effect of being a general warrant, and was so facially deficient that law enforcement could not act on it in good faith.  ECF No. 21 at 2.

The Fourth Amendment prohibits unreasonable searches and seizures, and no warrant may issue without probable cause.  U.S. Const. amend. IV.  There is probable cause for a search when there is a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  Probable cause does "not require officials to possess an airtight case before taking action," and officers "must be given leeway to draw reasonable conclusions" from information.  *Taylor v. Farmer*, 13 F.3d 117, 121-22 (4th Cir. 1993).  To establish probable cause for a search warrant based on information from an informant, the issuing magistrate must "consider all the circumstances set forth in the affidavit ..., including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information." *United States v. Hodge*, 354 F.3d 305, 309 (4th Cir. 2004) (*quoting Gates*, 462 U.S. at

238). The extent to which an informant's story is corroborated may also be considered. *See id.*[20]

In reviewing the probable cause determination, "[the Court] accord[s] great deference to the issuing judge's assessment of the facts presented." *United States v. Allen*, 631 F.3d 164, 173 (4th Cir. 2011). "[T]he task of a reviewing court is not to conduct a de novo determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the [judge's] decision to issue the warrant." *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984). In addition to the probable cause requirement, a valid warrant must be issued by a "neutral and detached magistrate" and must state with particularity the place to be searched and the items or person to be seized. See U.S. Const. amend IV; *United States v. U.S. Dist. of Mich.*, 407 U.S. 297, 316 (1972).

---

[20] In *Hodge*, the Court upheld the issuance of a warrant when "officers confirmed that the [known] informant correctly identified both Hodge's real name and the name he was using in Virginia," and "that Hodge had the phone number that the informant had provided and drove a dark green Jeep." *Hodge*, 354 F.3d at 310. *Cf. United States v. Porter*, 738 F.2d 622, 626 (4th Cir. 1984). In *Porter*, the Fourth circuit upheld a search warrant based on information provided by an anonymous informant corroborated by police. *Id.* The informant provided officers with the suspect's physical description and clothing she would likely be wearing (although not entirely accurately) and the suspect's travel plans. *Id.* at 626.

Here, the affidavit supporting the search warrant contained details about Riley from two informants. ECF No. 7-1 at 6-7. Both informants had been used by the agents in the past and had proved reliable. *See id.* Further, their statements were at least partially corroborated. *Id.*

More importantly, the search warrant affidavit did not depend on the confidential informants alone. The affidavit detailed how Riley went to and from his home immediately before meeting the undercover officer for a drug transaction. *See* ECF No. 7-1 at 1-2, 12-13. On one occasion, Riley allegedly told the undercover officer that he needed to pick up something for the officer at his home before the transaction. ECF No. 7-1 at 10-11. Agents surveilling Riley's home witnessed Riley immediately return home, enter his apartment for seven minutes, then leave to meet the undercover officer for a drug transaction. *Id.*

With the details of the drug transactions, the informants, and the surveillance, the affidavit establishes a nexus between Riley's home and the drug transactions. Thus, there is at least "substantial evidence" in the record to support the magistrate judge's finding that the warrant should issue. *See Upton*, 466 U.S. at 728.

Furthermore, under the "good faith" exception, when officers rely on a facially valid warrant and the supporting affidavit is later found to lack probable cause, the evidence seized is not subject to the exclusionary rule and is admissible in the Government's case in chief. *United States v. Leon*, 468 U.S. 897, 913 (1984). The evidence will be suppressed only if (1) the issuing judge was misled by information that the affiant knew or should have known was false, (2) the judge "wholly abandoned" his or her neutral role, (3) the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," or (4) the warrant is so facially deficient that no reasonable officer could presume it to be valid. *Id.* at 923.

Here, even if the warrant had lacked probable cause, there is no evidence that the issuing judge "abandoned" his or her neutral role in signing the warrant. Nor is there any evidence that the warrant is so facially deficient that no reasonable officer could presume its validity. Accordingly, the Court denied Riley's motion to suppress evidence from the search of his home.

D.   Riley's Vindictive Prosecution Arguments[21]

Riley argues that the superseding indictments should be dismissed because they are the result of a vindictive prosecution.  *See*, *e.g.*, ECF No. 33 at 3-4.  Riley asserts that the only reason that the superseding indictments were filed was because Riley was asserting his right to a speedy trial.  *See id.*  At the hearing, Riley entered a transcript of the grand jury testimony, showing that the Government presented evidence to the grand jury for a superseding indictment on the same day that Riley filed his motion to dismiss.  The Government asserts that it pursued the first superseding indictment "[f]ollowing an unsuccessful series of plea negotiations between the parties . . . ."  ECF No. 55 at 5.[22]

A prosecutor violates the Due Process Clause of the Fifth Amendment by punishing the defendant for exercising a clearly established right.  *See United States v. Goodwin*, 457 U.S. 368, 372 (1982); *Blackledge v. Perry*, 417 U.S. 21, 28-29 (1974).  "To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort, and

---

[21] Riley's various motions to dismiss and for sanctions argue that the Government was vindictive in its prosecution and has violated Riley's rights to a speedy trial under the Speedy Trial Act and the Sixth Amendment.  Rather than addressing each motion individually, each of these arguments will be discussed.

[22] The Government does not offer a reason for the second superseding indictment.  *See* ECF No. 55 at 5-6, 9-10.

for an agent of the [United States] to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is 'patently unconstitutional." *Bordenkircher v. Hayes,* 434 U.S. 357, 363 (1978) (internal citations omitted).

To establish prosecutorial vindictiveness, a defendant must show, through objective evidence, that (1) the prosecutor acted with genuine animus toward the defendant, and (2) the defendant would not have been prosecuted but for that animus. *See Goodwin,* 457 U.S. at 380 n. 12 (charges must be brought "solely to 'penalize' the defendant and could not be justified as a proper exercise of prosecutorial discretion"); *United States v. Wilson*, 262 F.3d 305, 314 (4th Cir. 2001).

"If the defendant is unable to prove an improper motive with direct evidence, he may still present evidence of circumstances from which an improper vindictive motive may be presumed." *Wilson*, 262 F.3d at 314. "To invoke such a presumption, a defendant must show that the circumstances 'pose a realistic likelihood of vindictiveness."[23] *Id.* (quoting *Blackledge,* 417 U.S. at 27). "But such a presumption is warranted only when circumstances warrant it for all cases of

---

[23] "By recognizing the possibility of creating a presumption that shifts the burden to the government to justify its conduct, not only is vindictive prosecution deterred, but also defendants are 'freed of [the] apprehension of such a retaliatory motivation.'" *Wilson*, 262 F.3d at 314 (quoting *Goodwin,* 457 U.S. at 376).

the type presented.  Because the presumption of vindictiveness must be applicable to all cases presenting the same circumstances, *it will rarely, if ever, be applied to prosecutors' pretrial decisions.*"  *Id.* (emphasis added) (internal citations omitted).  "[A] prosecutor should remain free before trial to exercise [that] broad discretion entrusted to him to determine the extent of the societal interest in prosecution.  An initial decision should not freeze future conduct."[24]  *Goodwin,* 457 U.S. at 382.  For example, the Supreme Court held that the issuance of a superseding indictment with more serious charges after a defendant rejects a plea does not warrant a presumption of vindictiveness.  *See id.*

Here, the superseding indictments were pretrial decisions, and Riley is not entitled to a presumption of vindictiveness.  Riley has offered no objective evidence of actual discriminatory or vindictive animus.  Accordingly, the Court denied Riley's motions to dismiss the indictments based on vindictive prosecution.

---

[24] "Thus, a change in the charging decision made *after* an initial trial is completed is much more likely to be improperly motivated than a pretrial decision."  *Goodwin,* 457 U.S. at 381.

E.    Riley's Speedy Trial Act Arguments

Riley argues that the indictment should be dismissed because the prosecution did not bring his case to trial within the Speedy Trial Act's[25] time limit.  *See, e.g.*, ECF No. 50 at 1-2.  The Government asserts that it is within the statutory deadline.[26]  ECF No. 51 at 1.

1. The Effect of Superseding Indictments

When a defendant is detained pending trial, the Government generally has 90 days to commence trial.  18 U.S.C. § 3164(b). However, under section 3161(h), certain periods of delay are excluded from the 90 day calculation.  *Id*.  The Government argues that the 90-day clock restarts with each superseding indictment.  ECF No. 51 at 6.  The Government does not cite binding authority that, when a defendant is detained pending trial, the speedy trial clock begins anew when the defendant is arraigned on a superseding indictment.  *See* ECF No. 57 at 6, 9. For the following reasons the Court rejects the Government's superseding indictment argument.

---

[25] 18 U.S.C. § 208 *et seq*.

[26] In its opposition, the Government states that the 90 days has not passed, but "[o]ut of an abundance of caution" requests that the Court dismiss Counts 1 and 2 without prejudice.  However, for reasons discussed *supra*, this may not resolve the speedy trial problem because Riley remains in custody.  Thus, the Court resolved this issue without dismissing Counts 1 and 2.

In *United States v. Feurtado*, 191 F.3d 420, 425 (4th Cir. 1999), the Fourth Circuit, in the context of a motion for release under § 3164, noted that the original indictment had been dismissed without prejudice, defendants were again indicted, and then reindicted on a superseding indictment. However, the Fourth Circuit held that no speedy trial violation occurred because, as defendants conceded, almost "all of the time between their arrests and their pleas of guilty was excludable under § 3161(h)(1)," and the time non-excludable did not reach the 90 days required for their release. *Id*. at 426-27. The Fourth Circuit has never held that reindictment restarts the 90-day clock.

In *United States v. Worthy*, 699 F.3d 661, 664-65 (1st Cir. 2012) *cert. denied*, 133 S. Ct. 1618 (2013),[27] the First Circuit held that "when an indictment is dismissed upon the motion of a defendant, the dismissal is without prejudice and [if] that defendant is again detained awaiting trial, section 3164's 90-day clock restarts at the moment that the defendant is re-

---

[27] Worthy had filed motions to dismiss the fourth superseding indictment and for release from custody, under sections 3161 and 3164 of the Speedy Trial Act. *Worthy*, 699 F.3d at 662. The government stipulated to Speedy Trial violations, and the Court ordered Worthy released. *Id*. About 15 minutes later, and before Worthy was discharged, Worthy was rearrested on a new criminal complaint. *Id*. Five days later, Worthy was reindicted on four counts almost identical to the counts charged in the fourth superseding indictment. *Id*.

arrested."[28]   The First Circuit stated that "it is unimaginable that Congress intended to permit re-indictment on the same offense but contemplated that a dangerous defendant or one who poses a risk of flight would automatically be freed because 90 days plus exclusions had expired on the detention under a prior charge and indictment."  *Id.* at 664.   To the contrary, Congress had an opportunity to address that situation, and it declined to do so.[29]

---

[28] *Accord United States v. Wilcox*, No. CRIM.A. 06-445, 2007 WL 4570803, at *2 (E.D. Pa. Dec. 26, 2007)(denying motion for release when the original indictment was dismissed on defendant's motion, and defendant was subsequently reindicted).

[29] In *United States v. Tirasso*, 532 F.2d 1298, 1300-01 (9th Cir. 1976), the Ninth Circuit held that section 3164 required the release of defendants detained more than 90 days, even though delays reasonably resulted from the size and complexity of the case, and its removal from New York to Arizona, and although a superseding indictment had recently issued.  *Tirasso* relied on "the clear language of the statute," finding that "the reason for delay is irrelevant, so long as it is not occasioned by the accused or his counsel."  *Id.* at 1299.

That same year, the D.C. Circuit declined to follow *Tirasso*, holding that "the exclusions of Section 3161 apply to the interim limits of Section 3164"; accordingly, the defendant was not entitled to release.  *United States v. Corley*, 548 F.2d 1043, 1044 (D.C. Cir. 1976).

In 1979, Congress amended the Speedy Trial Act to expressly incorporate by reference section 3161(h) into section 3164, so that the "periods of delay enumerated in section 316[1](h)" were excluded in computing time under section 3164.  *See* Speedy Trial Act Amendments of 1979, Pub.L. No. 96-43, 93 Stat. 327, 329 (codified as amended at 18 U.S.C. § 3164(b)).

Notably, however, Congress declined to incorporate by reference section 3161(d)(1), which provides that "[i]f any indictment or information is dismissed . . . , and thereafter . . . an information or

28

Congress was concerned about due process violations arising from lengthy pretrial detention, and relied on the "Speedy Trial Act's requirement of expeditious trials" to "alleviate any constitutional infirmity." *United States v. Berrios-Berrios*, 791 F.2d 246, 252 (2d Cir. 1986)(*citing* S. Rep. No. 225 at 22 n.63, *reprinted in* 1984 U.S. Code Cong. & Ad. News, at 3205 n.63). Accordingly, courts should be cautious in reading into § 3164 additional permissible delays for which Congress has not expressly provided.[30]

The Government also argues that *United States v. Lattany*, 982 F.2d 866 (3rd Cir. 1992), supports its argument. *Lattany*, involved a defendant detained pending trial, who later challenged his conviction and requested dismissal of his indictment under section 3161, because trial occurred 551 days after indictment. In *dicta* about release under § 3161, the Third Circuit stated that

---

indictment is filed charging such defendant with the same offense or an offense based on the same conduct or arising from the same criminal episode," the 70-day clock for bringing the defendant to trial under section 3161(c) is restarted. Congress, thus, took no position on whether reindictment restarts the 90-day clock under section 3164.

[30] "[T]he plain language of a statute is the best evidence of Congressional intent." *McMellon v. United States*, 387 F.3d 329, 339 (4th Cir. 2004)(*citing Holloway v. United States*, 526 U.S. 1, 6 (1999)). Here, the plain language of section 3164 requires trial to commence within 90 days, excluding only those periods of delay permitted under section 3161(h).

> [w]hen subsequent charges are filed in a supplemental
> indictment that charge the same offense as the
> original indictment or one required to be joined
> therewith, as in this case, the speedy trial period
> commences with the original filing. If the subsequent
> filing charges a new offense that did not have to be
> joined with the original charges, then the subsequent
> filing commences *a new, independent speedy trial
> period*.

*Id.* at 873 n.7 (emphasis added) (citations omitted). This *dicta*

does not support the Government's contention that a new

indictment restarts the speedy trial clock for *all* charges;

instead, a "new, independent speedy trial period" begins for the

new charges. *See id.* Moreover, in *Lattany*, the Third Circuit

affirmed the defendant's convictions on the basis of

continuances properly granted under section 3161(h),not because

a superseding indictment restarted the speedy trial clock. *Id.*

at 883.[31]

Therefore, absent controlling authority, the Court declined

to adopt the Government's argument that the speedy trial clock

restarted when Riley was arraigned on the superseding

---

[31] If the Court looked to section 3161 for guidance in
interpreting section 3164, the government's position would be
further undermined. In *United States v. Rojas-Contreras*, the
U.S. Supreme Court stated that, "when an indictment is dismissed
*on motion of the Government*, and the defendant is thereafter
reindicted, both the 30-day and 70-day periods continue to run
from the first indictment." 474 U.S. 231, 239 (1985)(Blackmun,
J., concurring)(emphasis added). The Court reasoned that the
clock should not begin anew to "protect[] against governmental
circumvention of the speedy-trial guarantee." *Id.*

indictments.  Instead, the Court calculated excludable time
under section 3161(h).

### 2. Calculating Excludable Time

On October 31, 2013, the date of the original indictment,
the 90-day clock began.  *See* 18 U.S.C. § 3161(h)(1); *United
States v. Wright*, 990 F.2d 147, 148-49 (4th Cir. 1993)(date of
court appearances excludable).  However, the Court issued an
order tolling the period between October 31 and December 5, 2013
under § 3161(h)(7).  ECF No. 4.  The Court made findings that
the ends of justice were served by tolling and outweighed the
interests of the public and the defendant in a speedy trial.
*Id.; see also* Zedner v. United States, 547 U.S. 489, 506-07
(2006).

Similarly, the Court approved defense counsel's request to
toll the period between December 5, 2013 and the parties'
receipt of the criminal history report.  ECF No. 52.  Although
the Court did not make findings then, it granted the request
because of defense counsel's representation that "an accounting
of [] Riley's criminal history will assist the parties in plea
negotiations and may help to resolve this matter."  ECF No. 52.
Thus, in the interest of promoting settlement, providing the
defendant with all information necessary to reach an informed
decision, and at the request of the parties, tolling the time

period between December 5, 2013 and February 11, 2014 served the ends of justice and outweighed the best interest of the public and the defendant in a speedy trial.[32]  *See United States v. Robinson*, 991 F.2d 792 (4th Cir. 1993) ("That the trial court did not enter contemporaneous findings at the time the continuances were granted, but did so in a later order, does not affect excludability.") (unpublished opinion); *United States v. Carey*, 746 F.2d 228, 230 (4th Cir. 1984).

On February 11, 2014, the parties began plea negotiations. *See* ECF No. 51 at 3.  On March 18, 2014, the parties represented to the Court that they were in active negotiations and requested another status date rather than a trial date.  The parties continued to negotiate until May 14, 2014, when defense counsel filed a motion to withdraw.  Thus, the period between February 11, 2014 and May 14, 2014 is tolled for active plea negotiations.  18 U.S.C. § 3161(h)(1); *see United States v. Keita*, 742 F.3d 184, 188 (4th Cir. 2014) ("other proceedings" include plea negotiations between the parties); *United States v.*

---

[32] Furthermore, as this request related to the parties' plea negotiations, it could also be categorized as "other proceedings" excludable under 18 U.S.C. § 3161(h)(1)(A).  *Cf. United States v. Keita*, 742 F.3d 184, 188 (4th Cir. 2014) ("other proceedings" include plea negotiations between the parties).

*Ford*, 288 Fed. App'x 54, 57-59 (4th Cir. 2008) (plea negotiations are excludable).

The period between May 14, 2014 and June 10, 2014 should be tolled as "other proceedings" under § 3161(h)(1) because the Court was actively engaged in assessing Riley's claims about his counsel and finding Riley new counsel.[33]  From June 10, 2014 to September 11, 2014, the parties were actively engaged in plea negotiations.  *See* ECF No. 17 (stating that the parties would inform the Court if plea negotiations stalled and a trial date was needed).  Thus, this period is excluded.  *See Keita*, 742 F.3d at 188.  On September 12, 2014, plea negotiations stopped, and defense counsel requested a trial date.  ECF No. 19.  At this point, the speedy trial clock began to run again.[34]

From October 30, 2014 to November 12, 2014, the speedy trial time was tolled under § 3161(h)(1) because of Riley's correspondence about counsel's deficient performance and the attorney inquiry hearing.  Thus, as of November 12, 2014, 49 days on the speedy trial clock had run.

---

[33] This time is also excludable because the Court was actively resolving defense counsel's motion to withdraw.  *See Ford*, 288 Fed. App'x at 58 ("Specifically, delays resulting from plea negotiations, and pretrial motions, from the time of their filing through their disposition, are excludable.").

[34] Because of the previous exclusions, no days had run on the 90-day clock by September 12, 2014.

December 19, 2014 was the motions deadline, and Riley's outstanding motions became ripe for the Court's determination. The motions hearing for final determination was scheduled for February 2, 2015.  Thus, the clock is tolled for that period.[35] *See* 18 U.S.C. § 3161(h)(1)(D)(H); *Henderson v. United States*, 476 U.S. 321, 326 (1986).  By February 3, 2015, when the jury was sworn in, a total of 87 days had accumulated.  Accordingly, there was no violation of 18 U.S.C § 3164(b).[36]

> 3. Untimely Indictment under 18 U.S.C. § 3161(b)

Further, Riley argued that the superseding indictments violated 18 U.S.C. § 3161(b).  ECF No. 60 at 1.  Section 3161(b) states: "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty

---

[35] It is possible that the speedy trial clock stopped the moment that the defendant filed his first motion on October 2, 2014. *Cf. Ford*, 288 Fed. App'x at 58.  Section 3161(h)(1)(D) states "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, *or other prompt disposition of*, such motion" is excludable.  (emphasis added).  Thus, in an abundance of caution, the Court will only exclude the time during which the Court actively considered the motions--from the motions deadline until disposition.  Including this time does not affect the ultimate speedy trial determination.

[36] Riley also moved for sanctions and his immediate release under 18 U.S.C. § 3164 for violation of his speedy trial rights.  ECF No. 36.  The Court denied Riley's motion for sanctions and immediate release for the same reasons that it rejected his other speedy trial arguments.

days from the date on which such individual was arrested or
served with a summons in connection with such charges."

"Although the Fourth Circuit appears not yet to have ruled
definitively on this point in the context presented by this case
in a published decision, '[s]everal circuits have . . . held
that superseding indictments filed longer than thirty days after
an arrest which add charges to those contained in the
original indictment do not violate the Speedy Trial Act.'"
*United States v. Hansen*, 747 F. Supp. 2d 642, 689-90 (quoting
*United States v. Hemmings,* 258 F.3d 587, 592 (7th Cir. 2001)
(collecting decisions of the United States Courts of Appeals for
the Fifth, Ninth, and Eleventh Circuits));[37] *see also United*

---

[37] *Accord. United States v. Walker,* 545 F.3d 1081, 1086 (D.C.
Cir. 2008) ("A superseding indictment filed more than thirty
days after arrest . . . does not violate section 3161(b) so long
as the original indictment was filed within the required thirty-
day time frame."); *United States v. Burgos*, 254 F.3d 8, 15-16
(1st Cir. 2001) ("The Act imposes a 30-day time limit between an
arrest and an indictment only where the arrest was "in
connection with" the charges in the indictment.  Burgos was
arrested on the cocaine charge and does not dispute that he was
indicted for that charge within the 30-day period prescribed by
the Act.  Thus, the money laundering count in the superseding
indictment did not charge him with the crime for which he was
arrested.  Under these circumstances, there is no violation of
the Act.") (citation omitted); *United States v. Velasquez*, 890
F.2d 717, 719-20 (5th Cir. 1989) ("Our research reveals no case
in which the court has applied the gilding exception to bar
prosecution for an offense not raised in an initial complaint.
Indeed, application of the rule would draw the court into the
very case-by-case inquiry that the bright-line rule attempts to
avoid.  We do not hold that the gilding exception will never be
applicable.  We do conclude, however, that the exception should

35

*States v. Leftenant,* 341 F.3d 338, 343 (4th Cir. 2003) (the Speedy Trial Act "does not limit the Government's ability to charge a defendant with offenses unrelated to the charge underlying his arrest," which "can be brought at any time") (quotation omitted).

Riley's original indictment was filed within 30 days of the complaint and included all of the charges in the complaint. Section 3161(b) does not apply to any of the additional charges in the superseding indictments. Accordingly, the Court denied Riley's § 3161(b) motion.

F.    Riley's Speedy Trial Arguments under the Sixth Amendment

Riley also argues that the Government has violated his right to a speedy trial under the Sixth Amendment. *See, e.g.,* ECF No. 46 at 2-3. At the motions hearing, the Government argued that the delay was not unreasonable and no constitutional violation occurred.

"A criminal defendant's right under the [Speedy Trial] Act is separate and distinct from his Sixth Amendment right to a

---

not apply in this case, where the conspiracy count of the indictment alleges an offense that is separate and distinct requiring proof of different elements.") (internal quotation and citation omitted); *United States v. Giwa,* 831 F.2d 538, 542-43 (5th Cir. 1987) (30-day time limit only applies to the charges in the original criminal complaint).

speedy trial."[38]   *United States v. Thomas*, 305 Fed. App'x. 960,

963 (4th Cir. 2009).   The Sixth Amendment provides that "[i]n

all criminal prosecutions, the accused shall enjoy the right to

a speedy and public trial." U.S. Const. amend. VI.   Courts

analyze four factors to determine whether this right has been

violated: "[l]ength of delay, the reason for the delay, the

defendant's assertion of his right, and prejudice to the

defendant." *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *United

States v. Woolfolk*, 399 F.3d 590, 597 (4th Cir. 2005).   "In

addition to being a factor, the first inquiry is also a

threshold requirement, because '[s]imply to trigger a speedy

trial analysis, an accused must allege that the interval between

accusation and trial has crossed the threshold dividing ordinary

from presumptively prejudicial delay.'"   *Woolfolk*, 399 F.3d at

597 (quoting *Doggett v. United States*, 505 U.S. 647, 651-52

(1992) (quotation marks omitted)).   "After the defendant makes

this threshold showing, he must . . . show on balance, that the

four inquiries weigh in his favor."   *Id.* (quotation and citation

omitted).

---

[38] "Although compliance with the Speedy Trial Act does not bar
Sixth Amendment speedy trial claims, 'it will be an unusual case
in which the time limits of the Speedy Trial Act have been met
but the [S]ixth [A]mendment right to a speedy trial has been
violated." *United States v. Davenport*, 935 F.2d 1223, 1238-39
(11th Cir. 1991) (quoting *United States v. Saintil*, 705 F.2d
415, 418 (11th Cir.1983)).

Although here the first factor--length of delay--is sufficient to trigger the Barker analysis,[39] the remaining factors weigh against finding a violation.  At the hearing, the Government asserted that the delay in this case was not uncommonly long and was due to good faith plea negotiations, discovery, and Riley's multiple changes of counsel.  There is simply a dearth of evidence supporting prosecutorial misconduct or bad intent.[40]  Instead, the delay appears to have occurred through the consent of both counsel, although Riley now contends that he never gave counsel permission to approve any delays.[41]

---

[39] The Supreme Court has stated that "postaccusation delay [is] presumptively prejudicial at least as it approaches one year." *Doggett v. United States,* 505 U.S. 647, 652 n. 1 (1992). Although the Court was discussing the fourth factor, its view that a year-long delay is prejudicial informs the analysis of the first factor.  However, the Fourth Circuit has found that a "two-year delay before trial was not uncommonly long." *United States v. Hopkins*, 310 F.3d 145, 150 (4th Cir. 2002).

[40] "A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government.  A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay." *Barker,* 407 U.S. at 531.

[41] Riley argues that he "has never requested anything related to any plea negotiations, . . . [and] never authorized his counsel . . . to engage in plea discussions."  ECF No. 56 at 2. However, Riley's May 22, 2014 letter to the Court contradicts this assertion. *See* ECF No. 13.  In it, Riley mentions

*See United States v. Andrews*, 365 Fed. App'x 480, 484-85 (4th Cir. 2010); *United States v. Hall*, 551 F.3d 257, 272 (4th Cir. 2009).

"[F]ailure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Barker*, 407 U.S. at 532.  The very first time the Court was aware of possible speedy trial issues was on September 9, 2014 when Riley sent correspondence to the Court.  ECF No. 18. Immediately after this letter, defense counsel informed the Court that plea negotiations had failed.  ECF No. 19.  Only nine days after Riley's correspondence, his case was scheduled for trial.  ECF No. 20. No subsequent continuance was ever granted. The first motion asserting Riley's speedy trial rights was filed October 28, 2014.  ECF No. 25.  Thus, Riley did not assert his speedy trial rights until approximately a year after his arrest and five months before trial.  This factor weighs against finding a violation.  *See, e.g.*, *United States v. Grimmond*, 137 F.3d 823, 829 (4th Cir. 1998) ("It is undisputed that Grimmond failed to assert his right to a speedy trial until March of 1996, four months before the start of his trial. . . .  [W]e conclude that his failure to assert his right to a speedy trial should be weighted in favor of the Government.").

considering a plea and the consequences of that plea on the sentencing guidelines.  *Id.*

Prejudice "should be assessed in the light of the interests . . . the speed trial right was designed to protect." *Barker*, 407 U.S. at 532.  "These interests include: (1) preventing oppressive pretrial incarceration, (2) minimizing the anxiety and concern of the accused, and (3) limiting the possibility that the defense will be impaired." *See*, *e.g.*, *Grimmond*, 137 F.3d at 829.  "The most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Barker*, 407 U.S. at 532.  "Postaccusation delay [is] presumptively prejudicial at least as it approaches one year." *Doggett v. United States*, 505 U.S. 647, 652 n. 1 (1992).

During the pendency of this case, Riley has been incarcerated.  This fact weighs in Riley's favor, but in this case it is not alone sufficient to establish prejudice.[42]  At the motions hearing, Riley requested an additional three-month delay to finish preparing his case and was unsure whether he was prepared to proceed to trial.  This fact supports the Government's argument that there was no prejudice.

---

[42] *Barker*, 407 U.S. at 533 ("We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant.  In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process.").

In briefing, Riley asserts that because of the delay "a key witness has gone missing." ECF No. 46 at 10. The first mention of this possible prejudice occurs in Riley's December 10, 2014 motion to dismiss (three months before trial); it was not contained in any prior motion or Riley's subsequent motions or replies. *See id*. In Riley's explanation of the missing witness, it appears that the witness was a Government witness whose loss would actually *harm* the Government's case. *See id*. Further, Riley did not mention this missing witness at the motions hearing. Thus, there is no apparent prejudice.[43]

Although Riley has shown a delay sufficient to trigger *Barker*--and some form of prejudice--the other factors weigh in the Government's favor. Further, "although compliance with the Speedy Trial Act does not bar Sixth Amendment speedy trial claims, 'it will be an unusual case in which the time limits of the Speedy Trial Act have been met but the

---

[43] *See Andrews*, 365 Fed. App'x at 485 ("Lastly, Andrews has made no showing of prejudice, thus the final factor also weighs in favor of the Government. Although Andrews claims he was prejudiced due to loss of witnesses and an alibi defense, he has failed to identify any specific witnesses who were unavailable to testify or could not accurately recall the events in question, and he does not contend that exculpatory evidence was lost or rendered unavailable by the delay."); *see also United States v. McGrier*, 848 F. Supp. 649, 655 (S.D. W. Va. 1994) (assertion that delay made witnesses "difficult to reach" was not the same as showing that such witnesses were unavailable for trial).

[S]ixth [A]mendment right to a speedy trial has been violated."
*Davenport*, 935 F.2d at 1238-39 (quoting *Saintil*, 705 F.2d at
418.  For these reasons, the Court denied Riley's Sixth
Amendment claims.[44]

   G.   The Government's Motion in Limine

       1. The Civil Suit

   During discovery, the Government informed Riley that, in
2002, the undercover officer was sued in the Circuit Court for
Baltimore City for negligence, assault, battery, and malicious
prosecution.  ECF No. 65 at 1.  Court records show that a
judgment of $4,689.85 was entered against the officer, but do
not reflect the theory of liability under which the damages were
awarded.[45]  On February 1, 2014, the day before trial, the
Government moved to exclude cross examination of the undercover
officer based on the civil case.  ECF No. 65 at 1.  The
Government asserts that the civil case should be excluded
because the misconduct does not relate to truthfulness.  ECF No.
65 at 2.

---

[44] *See United States v. Woolfolk*, 399 F.3d 590, 598 (4th Cir.
2005); *Grimmond*, 137 F.3d at 827 (35 month delay did not violate
Sixth Amendment); *United States v. Thomas*, 55 F.3d 11, 149 (4th
Cir. 1995) (two and half year delay was constitutional).

[45] The Government represents that the verdict form was not
available and that a "Maryland Judiciary Case search also
reflects the case but does not specify the nature of the jury's
findings."  ECF No. 65 at 2.

Under Fed. R. Evid. 608(b):

Specific instances of the conduct of a witness, for the
purpose of attacking or supporting the witness'[s] charac-
ter for truthfulness, other than conviction of crime as
provided in rule 609, may not be proved by extrinsic
evidence.  They may, however, in the discretion of the
court, if probative of truthfulness or untruthfulness, be
inquired into on cross-examination of the witness (1)
concerning the witness'[s] character for truthfulness or
untruthfulness, or (2) concerning the character for
truthfulness or untruthfulness of another witness as to
which character the witness being cross-examined has
testified.

Thus, a disciplinary record that is the basis of cross-

examination must focus on the officer's truthfulness.  Misconduct

that is probative of truthfulness includes "perjury, fraud,

swindling, forgery, bribery, and embezzlement." *United States*

*v. Leake*, 642 F.2d 715, 718 (4th Cir. 1981).

In *United States v. Harris*, 551 Fed. App'x 699, 705 (4th

Cir. 2014), the Fourth Circuit affirmed this Court's decision to

exclude cross examination of a police officer based on previous

allegations of "brutality, false arrest, and excessive force."

In relation to the allegations of brutality and excessive force,

the Fourth Circuit concluded that "the Rule authorizes inquiry

only into instances of misconduct akin to 'perjury, fraud,

swindling, forgery, bribery, and embezzlement[.]'  And other

courts have rejected the notion that more general police

misconduct, such as excessive force, falls within the Rule's

43

scope." *Id.* at 706 (quoting *United States v. Leake*, 642 F.2d 715, 718 (4th Cir.1981)).

The Fourth Circuit recognized that the allegations of false arrest and "planted evidence" did reflect truthfulness at least in part. *Id.* However, as the allegations were from the officer's disciplinary record and were only allegations, the court concluded that "[m]ere accusations of prior misconduct inherently have little probative value. They are, after all, 'both unproven and unconnected to th[e] [instant] case.'" *Id.* at 706 (quoting *United States v. Custis*, 988 F.2d 1355, 1359 (4th Cir. 1993)).

Here, the civil allegations of negligence, assault, and battery do not relate to truthfulness. The malicious prosecution charge potentially relates to truthfulness and reflects on the undercover officer's integrity. *Compare Phillips v. Irvin*, No. 05-0131-WS-M, 2007 WL 2310038, at *4 n.7 (S.D. Ala. 2007) (disciplinary report in which an officer's supervisors stated that he had been "less than truthful in discussing certain disciplinary matters" could be used under Rule 608(b)), *with United States v. Seymour*, 472 F.3d 969, 970 (7th Cir. 2007) (that an officer uses "excessive force [is] not probative of his truthfulness" under Rule 608(b)).

44

Although the Government asserts that the malicious prosecution charge should be excluded because there were no indications that the jury's verdict was based on malicious prosecution and that the jury award was so large that it was likely that it based the finding on another theory, here, there are more than mere allegations.  To balance the interests in this case, especially given the late hour of the Government's motion, the Court granted the Government's motion as to the negligence, battery, and assault civil counts, but denied it for the malicious prosecution civil charge.

### 2. Extrinsic Evidence

The Court limited the cross examination to mention of the civil malicious prosecution charge and would not permit any questions on the jury verdict for the plaintiff because why the jury gave the award is unclear.  The Government argued that allowing any mention of the civil suit was extrinsic evidence of bad conduct which violated Rule 608(b).  The Government asserted that Riley should be limited to only asking about the underlying conduct leading to the malicious prosecution suit, which the witness would be free to deny.

Rule 608(b), "recognizes that the trial court must have discretion to apply the overriding safeguards of rule 403 (excluding evidence if its probative value is substantially

outweighed by dangers of prejudice, confusion or delay) and rule
611 (barring harassment and undue embarrassment of a witness).
The trial court's discretion is not, however, absolute; it may
not foreclose a legitimate inquiry into a witness's
credibility." *United States v. Leake*, 642 F.2d 715, 718 (4th
Cir. 1981).  "[T]he proper factors to be employed in measuring
the scope of cross-examination [are] the importance of the
testimony to the Government's case, the relevance of the conduct
to the witness's truthfulness, and the danger of prejudice,
confusion, or delay." *Leake,* 642 F.2d at 719.

Under Rule 608 "courts [have] allow[ed] cross-examination
about specific instances of conduct that are not necessarily
probative of truthfulness, viewed in isolation, if the evidence
viewed in context is probative of a witness'[s] character for
truthfulness." *Id.* For example, in *United States v.
Whitehead,* 618 F.2d 523, 529 (4th Cir.1980), the Fourth Circuit
permitted questioning of the defendant about the suspension of
his law license and the facts underlying the suspension because
they tended to show deceit. *See also*, *Leake*, 642 F.2d at 719
(witness's indictment for obtaining money under false pretenses,
an arrest warrant for defrauding an innkeeper, and default
judgments seeking repayments of loans established "a pattern of

46

fraudulent activity that, if revealed, would have placed [his] credibility in question").

"Because '[a] witness' credibility may not be impeached by extrinsic evidence of specific instances of conduct[,] . . . [a] cross-examiner may inquire into specific incidents of conduct, but does so at the peril of not being able to rebut the witness' denials. The purpose of Rule 608(b) 'is to prohibit things from getting too far afield—to prevent the proverbial trial within a trial.'" *United States v. Edwards*, No. 11CR161-1, 2012 WL 1119875, at * 3 (M.D.N.C. 2012); (quoting *United States v. Bynum,* 3 F.3d 769, 772 (4th Cir. 1993)).

Accordingly, the Court found that Riley could ask the undercover officer about specific instances of conduct and the fact that he was sued for malicious prosecution. *See Whitehead,* 618 F.2d at 529. However, if the officer denied either the conduct or the suit, Riley was prohibited from introducing the transcript, jury sheet, or any other evidence to prove the existence of the suit or the award. If the officer lied, Riley would be stuck. However, Riley could inquire into the malicious prosecution claim. The examination of this witness was especially important as the witness was the undercover officer who interacted with Riley and was central to the Government's case. *See Leake,* 642 F.2d at 719; *Edwards*, 2012 WL 1119875, at

47

* 4 ("The more important the witness is to the Government's case, the more important it is to allow thorough cross-examination.").

H.   Riley's Motion for Appointment of Counsel

Before trial began on February 2, 2015, Riley requested a three-month continuance and asked that stand-by counsel be appointed as defense counsel.

In *United States v. West*, 877 F.2d 281, 286 (4th Cir. 1989), the Fourth Circuit affirmed the district court's denial of the *pro se* defendant's motion to appoint counsel 11 days before trial.

> The determination of whether or not a motion for substitution of counsel should be granted is within the trial court's discretion, and the court is entitled to take into account the countervailing public interest in proceeding on schedule.  This countervailing interest has no less weight merely because the motion is filed by a pro se defendant.  We have said that "[t]he defendant cannot be allowed to continue the practice, with little or no apparent reason, of hiring and firing attorneys," and this remains true when the defendant is "hiring and firing" himself.

(citations omitted) (quoting *United States v. Gallop*, 838 F.2d 105, 110 (4th Cir. 1988)).  Similarly, the Second Circuit reasoned that "once a defendant voluntarily and intelligently waives his right to counsel and elects to proceed *pro se*, the decision whether to grant or deny his 'post-waiver request for counsel is well within the discretion of the district court.'"

*United States v. Kerr*, 752 F.3d 206, 220-221 (2d Cir. 2014)

(quoting *United States v. Leveto*, 540 F.3d 200, 207 (3d

Cir.2008)).

In this case, Riley went through two different appointed

attorneys.  He asked to represent himself at the second attorney

grievance hearing where he was informed of his rights and the

consequences of waiver, but chose to proceed *pro se*.  A month

before the trial, stand-by counsel informed the Court that Riley

was interested in having her serve as defense counsel.  However,

when Riley was informed that this would delay the trial, he

elected to proceed *pro se*.  *See* ECF No. 59.

Riley was given numerous opportunities to have counsel and

was informed of the consequences of his decision; he elected to

go to trial *pro se*.  Only on the morning of trial, did Riley

assert that he wanted a three-month delay so stand-by counsel

could become defense counsel.  The request "countervail[s] []the

public interest in proceeding on schedule."  *West*, 877 F.2d at

286.  Accordingly, the Court denied Riley's request.

III. Conclusion

For the reasons stated above, the Court granted in part and denied in part the Government's motion in limine; Riley's opposition to the scheduling order was granted in part to allow the Court to consider all filed motions; all other motions were denied.


2/4/15
Date

William D. Quarles, Jr.
United States District Judge